Thank you, Thomas Orlando, on behalf of Appellant Travelers Property Casualty Company of America. Your Honors, may I reserve four minutes for rebuttal? Yes. Thank you. May it please the Court. Apple E.E.S.I. contracted to build a retail fuel center. In its contract with the project owner, there was a provision that stated, any movement or floating of tanks resulting from an accumulation of water in the tank excavation will require removal and reinstallation of the tanks at E.S.I.'s expense. That is precisely what happened in this case. One of the tanks floated after it had been installed in the excavation hole. The work that E.S.I. was doing needed to be redone. The insurance policy that Travelers issued to E.S.I. excludes faulty or inadequate workmanship or construction. And so the issue presented in this case is whether this kind of inadequate workmanship that was experienced on this job site is the kind of inadequate workmanship or construction that the policy excludes. Before addressing the legal issue or the legal question, I wanted to provide some facts that I think are important to the analysis of it. These are all undisputed facts. It is undisputed that the installation took place in what is called a wet hole. There were already 12 inches of groundwater in the excavation when the installation began. It is undisputed that the installation took place during a time of adverse weather conditions. And that the subcontractor, Three Kings, was contractually required to protect their work from the adverse weather conditions. It is undisputed that the tanks were lowered into the excavation hole between December 15 and 17, 2014. And at some point thereafter, it's undisputed that a pump that was used to remove water from the excavation was pulled from the excavation. It is undisputed that the project owner acknowledged as early as December 17, which was the last day of the installation of this tank, that the tank was not completely ballasted and that this remained to be done. Could I ask you to address Allstate against Smith? Because there we had pretty similar policy language and we said, you know, we're focusing on workmanship, but it's ambiguous as to whether it refers to a defect in the completed product or a defect in the process of how you do it. And why isn't that reasoning equally applicable here? For a number of reasons, Your Honor. First of all, Idaho law applies and not California law. And this court was very clearly construing California law in the Allstate case. And I believe that's the first error that the district judge made here, is that the district court went directly to the Allstate case as opposed to looking first at Idaho. So the Fisher case comes out of Idaho. In that case, much more recently than the Allstate case, the Idaho Supreme Court had an occasion to look at this very exclusion. Well, they had an occasion to look at it in a case where a house got destroyed intentionally, basically. Yes, yes. And concluded that the exclusion did not apply because the intentional destruction of the house was not faulty or inadequate. But in the course of analyzing that issue, what the court did is it looked at both the product and the process definitions taken from the dictionary of workmanship and applied both. The Idaho Supreme Court did not say that the exclusion was ambiguous. That's not why they ruled against the insurance company in that case. And I think that's critical that the Idaho Supreme Court did not find or make a ruling that the exclusion is ambiguous. Instead, it applied both the product and the process prong to the facts at hand and determined that under either of those scenarios, it wasn't faulty. And that suggests to us that what the Idaho Supreme Court would do would interpret workmanship in both ways, as many courts and jurisdictions have done. We fight those cases. Mr. Orlando, Mr. Orlando, Mr. Counsel, isn't it true that more recently than Fisher, we have the Greenwald case? Greenwald being West's company, I'm not really sure. But it's in that case in 2019, it's still the Idaho Supreme Court who now is saying that if you do have two different reasonable interpretations of a contract language, then the contract is ambiguous. And the ambiguity must be construed most strongly against the insured. So how does Greenwald, the most recent Idaho Supreme Court case, coexist now with Fisher? Well, because in this case, in our case, and in Fisher, it isn't necessarily an either or, as many other courts have found. It can be reasonable to interpret the exclusion to include both. But that actually takes us back to Judge Miller's question in the second half of the answer, which distinguishes this from Allstate, is the circumstances of our case. And I think there are two distinguishing features. In the Allstate case, the insured was the doctor's office. It was the tenant. And the insured property was the medical equipment that was located in the office space. The roof had been removed by a contractor. And again, it's not clear from the record, but I presume that it was the landlord that was having a new roof put on the building. So the contractor in Allstate was not a party to the insurance contract or the insurance policy. The contractor took the roof off, didn't protect the opening, and somebody else's property, the doctor's equipment inside, was damaged. That's quite a bit different than our case, where the insured is the contractor, and we're actually insuring the construction project. And that's... Well, I mean, I agree with you that it's pretty different, and the difference suggests that it's easy to understand why it makes more sense to provide coverage in that context than in this context, where it's the contractor or the subcontractor's own fault. But that's not what the rationale of Allstate was. In Allstate, we were just looking at the words and trying to figure out what the meaning of the words was. So why is the consideration you just identified relevant to figuring out what that clause in the policy means? Well, the court in Allstate, again, turned to the dictionary and said it means both. Workmanship means both product and process, and decided that we have to pick one. I'm not sure you have to pick one. I think it can be both. But if we have to pick one, in that case, the court said you have to pick it in the context of the case and the context of the policy. And so I think that in that context, the court picked product because it involved a stranger to the policy who was doing the work. In our case, this is a builder's risk policy. If we pick product, a flawed product, the exclusion will never come into play. If it's interpreted to mean a completed project, as the district would know. Counsel, wouldn't the exclusion come into play, though, if there was a completed product before the policy terminated? So, for example, if there's not a final acceptance of the project, once the project is accepted, that auto-terminates the policy. But couldn't the product be completed, but the policy not yet be terminated? Because the project itself, the acceptance of it is still pending. So there could be a permit. So the policy ensures ESI for a number of their projects, and then it terminates, the policy terminates on a project-by-project basis as they're completed. The project could be accepted without anybody knowing, for example, that there was a construction flaw or defect of some case, which could manifest a day after project acceptance. This policy would not come into play, because at that point, the risk of loss would have transferred to the owner, and the owner presumably would have its own insurance to cover the project of the property at that point. Counsel, one thing that I want to make sure you address is, if we were to agree with you on either workmanship or construction, I'd like you to explain to me why at least some of the loss here wouldn't be covered by the resulting loss clause. Sure. Frankly, because there is no resulting loss. The loss itself was limited to, so what happened was, because there was not adequate ballasting, the tank floated four or five feet. There was some damage to the tank. All that was required to be done was to repair that damage and reinstall the tank. There was no damage to any other property. There was no other peril or covered cause of loss that resulted from this inadequate ballasting. The example that we used in our brief was, let's say when the tank floated, let's say it severed a gas line, for example, and that caused an explosion. That's the kind of thing that is picked up in the resulting loss clause. The explosion would be the resulting cause of loss, and explosions are covered causes of loss, and then the damage from the explosion would be the resulting damage from the resulting cause of loss, and the explosion damage would be covered. But in this case, the damage was limited to what was faulted, which was the installation process. But the storage tank did not float by itself. It floated because of the rain, but for the rain, the faulty installation would not have caused the tank to float by itself. It was because of the rain, so you're saying there was no other damage by that rain? The rain did not damage the tank, and the rain is not a resulting cause. Didn't the district court find that it was? The district court did find that rain was a factor, but it's not. As a matter of law, I think that was an error, because as a matter of law, the rain could not have resulted from the floating tank. There was rain involved before the tank floated, so the rain can't be a result of the floating when there was rain before the floating. I see that I'm into my rebuttal. What about the other, we have the flood endorsement and the earth movement endorsement. Do those apply here? They do not apply here. I'll reserve the rest of my time for rebuttal. Okay, Mr. Christ. Thank you. May I please have the floor? I'm Tom Christ, I represent plaintiff PSI. I'd like to begin my argument with the first question put to Mr. Orlando, which is why doesn't Allstate v. Smith apply here? The proper answer is it does apply here. That case construed the very exclusion that you're looking at. And yes, that case was applying California law, but the opinion cited no California case. It was not based on any nuance of California law. It was based on an examination of the plain language of the exclusion. And this court looked at it and said that warped leadership has two possible interpretations. It can refer to a flawed process or it can refer to a flawed product. Counsel, even if we agreed with you, why would that analysis apply to the construction exclusion? I mean, there's an exclusion for faulty, inadequate or defective construction. And while workmanship may only be mentioned once in the policy, construction isn't mentioned only once. For example, at page 343, the policy says completion of the product includes site preparation, including demolition, fabrication, assembly, installation, erection, alteration, renovation and similar construction activities. So even if we were to agree with you on workmanship, explain to me how at least some of the loss here wasn't as a result of faulty, inadequate or defective construction. Well, a couple points, Your Honor. As used in the exclusion, it also has the word construction, but construction, we believe, is susceptible to the same dual interpretation as workmanship. Construction can refer to a process or it can refer to the net result, creating an ambiguity that this court recognized in all state. An ambiguity that we believe the Idaho Supreme Court would recognize as well. Based on the limited language in the Fisher case, they devoted a paragraph to this. But the court there recognized that workmanship, and we submit construction as well, is capable of two interpretations. It can mean the process or it can mean the end result. No, please go ahead, Judge Mueller. I'm not sure that really answers Judge Bennett's question, which I took the point to be that, you know, construction in the abstract might have a couple different meanings. But here it's used elsewhere in the policy in ways that, as in the example Judge Bennett just read, is strongly suggestive of a process-based understanding of what construction is. So why doesn't that resolve the ambiguity that would otherwise exist? I'm sorry I don't have my finger on it, but I think one of the references was to construction activity, which suggests the process, not a product. So if you're just looking at the exclusion that they relied on here, the terms used there are capable of two meanings. They're ambiguous, and under Idaho law as well as California law, that ambiguity should be construed in favor of the insured, which would mean that so long as the project is not yet finished, the exclusion would not apply. And indeed, the project here was not finished, the whole project, but not also the installation. And that should be the end of the case as far as the exclusion is concerned. If the court doesn't agree with that, there is still the ensuing lawsuit exception, which would apply here because clearly there was a follow-up loss caused by a covered peril, which was the heavy rainfall. So Council, why don't you tell us exactly what you believe? Let's assume that we disagreed with you, as you said, in getting to this argument on either workmanship or construction. What damages here do you think, if we were to decide that the resulting loss provision kicked in and rejected Traveler's argument, what specific damages would be still covered under the resulting loss provision and why? Well, let me explain it this way, Your Honor. In the circumstances of this case, Traveler's made no attempt, despite, I think, invitation from the court to distinguish the categories of damages. They said the whole thing is uncovered. In our view, if any is covered, then that should end the case as far as they're concerned. But as I construe, the exclusion, if the exclusion applies even to a project that is not yet completed, the ensuing loss exception would cover anything other than what is alleged to be defective. The defect here was simply inadequate ballasting. So re-ballasting the tank would be covered. Everything else would be uncovered. It's all a resulting loss. So, Council, your contention is that the damage to the improperly ballasted tank would be covered by the resulting loss provision and that the only thing that wouldn't be covered is, what, the water? Filling it up with ballast? That that wouldn't be covered, but the damage to the tank would still be covered? No, the other way around. Yes, that you wouldn't be able to get the cost of putting the ballast back in, but you would be able to get the cost of repairing the damage to the tank. Yes, I have trouble understanding that. So why don't you explain to me how that would be under if we applied the result, even if we applied the resulting loss provision, how that would have been caused by the water as opposed to clearly caused by the faulty construction or workmanship. If we applied that exclusion. Well, Your Honor, the alleged defect is failure to put in enough ballast. And under the exclusion, it says fixing your defect is not covered. Everything else that results from a defect in combination with another covered cause of loss, including heavy rainfall, is covered. The point of this exclusion is that if you discover, if the work is defective, and skipping over again whether the project has to be completed or not, but if you discover that the work is defective, you build something improperly, then it has to be rebuilt. The cost of rebuilding is not covered. But if before it is rebuilt, there is some damage from another covered peril, all of that other damage, all of that other loss is covered, excepting what you have to fix. So the cost of re-sitting the tank in the ground, which includes, it's not just letting it back down again, it includes re-excavating the trench, replacing the bedding. There's all sorts of work involved, which is why this repair became so expensive. All of that is a resulting loss that is caused by the heavy rainfall, even if in combination with the inadequate ballasting. And all of that would be covered in the ensuing loss provision. The only thing that exclusion applies to, when there is a secondary peril that comes into play, is fixing the original defective work. And the only thing that was, no one said that you put this tank in the ground wrong. It was improperly excavated, bedded, backfilled, or anything. The only thing is you did not put in enough ballast under the circumstances. And so that's the only defect in workmanship, and that would be the only thing under the ensuing loss exception of the exclusion that would be excluded. As well as perhaps, in paragraph two, any resulting loss or damage to the property. The property here is the tank, and there's some indication that the thing was scratched. But again, travelers may not attempt to try and carve out the damages for repairing that scratch. Council, I'm sorry to interrupt you, but just to make sure. I'm willing to consider that perhaps there is some loss because of the rain or something else that is not covered by the exclusion that could survive. But do we have sufficient information on the record, or is this a reason to remand? Because I noted that both parties did not want to remand for the resulting loss or damage issue. But I'm not sure, is this a tribal issue of fact? Is this something that the district court judge should look at? We should remand for the district court to look at more carefully and make some findings and ruling again on the motion for summary judgment? Or are you convinced that we need to be able to make this finding based on the record we have now? That was the point I was trying to make earlier, Your Honor, is that travelers had an opportunity to deny coverage for certain aspects of the alleged damages, and they didn't do that. They denied everything, and then in the course of this lawsuit, they have insisted that nothing is covered. It was their burden, I submit, to say, okay, if not everything is excluded, then at least these things are excluded, and they didn't do that. So I think they have waived their opportunity in their original denial, and then in the course of these proceedings, including on appeal, they've not argued to you that something should be excluded, if not everything. They wanted the whole tamale, and they didn't try and get any smaller part of it. And I don't think now it would be appropriate for me to go back and allow them, mixing my metaphors, to get another bite of the apple here. I don't know. It seems to me, counsel, that it would be a strange result if we were to hypothetically reject both travelers' argument and your argument, that the result would be that even if we rejected both arguments as to what the resulting loss clause meant, if we got to it, that all we could do was pick one side or the other, even if we rejected both of your legal arguments, as opposed to telling the district court what we think the proper test is, and then saying to the district court, you should apply that, whether at summary judgment or at trial. I'm not sure of a legal principle that would require us to pick, because both sides took an absolutist position if we rejected that absolutist position for both. Respectfully, Your Honor, I disagree. They had their opportunity to say we were excluding everything or something less, at least, and they didn't do that. It seems to me, if you construe the exclusion the way I contend, which is that it doesn't apply, as you said, in all state, it doesn't apply to a project still in progress, that would be the end of the matter. And even under the ensuing loss exclusion, I do not see anything that would not fall within the ensuing loss exception to the exclusion, other than the alleged defect, which was failure to ballast the tank. Everything else is outside of the alleged defect, and under the exception there, it would come back within coverage. If there's no more questions on that, let me speak briefly to our cross appeal, which concerns the summary dismissal of the bad faith claim. The trial judge found that there was no issue for a jury there, and respectfully, we disagree. There is at least this evidence. There are two documents. One is the report of the expert the travelers hired to go out and investigate this loss, who came back and concluded that I can't tell whether or not the tank was adequately ballast. Three Kings said that it was. ESI said maybe not. It's not impossible to tell. We need additional investigation to determine whether the ballast was adequate. With that report in hand, the very next day, travelers denied this claim, and they denied it by saying the ballasting was inadequate, and we came to that conclusion after a thorough investigation. Now, if we got to a trial, I think I could stand in front of a jury and wave those two pieces of paper at them and say this is an insurer behaving badly. They get a report from their expert that says you need more investigation to determine whether the ballast was inadequate, and the next day they say the investigation has been thorough and the ballasting is inadequate, just what their expert told them not to. I think a panel of jurors would say, yeah, we are as dismayed by that as your client, Mr. Chris. Maybe not. Counsel, your time is up. Why don't you conclude, please? I can't see where the time is, but maybe not. Maybe they wouldn't, but I think that we should have that opportunity to present it to the jury. Thank you. All right.  Mr. Orlando, whenever you're ready. Thank you, Your Honor. I'm going to start with agreeing with you, Judge Bennett, that I don't think there's been waiver here, and I think that on the cross motions for summary judgment, the parties weren't obligated to bring every issue to the table. Travers brought the issue, the threshold legal issue about the applicability of the exclusion. That did not waive. If the district court had disagreed, as you stated, with both parties, then some of these other issues would still be on the table for resolution. But the record is actually fairly clear on this. So the $177,000 involves a couple of three things. There was some damage to the tank that needed to be repaired. There was digging out the excavation or re-excavating and then reinstalling the tank. So when we look at the exclusion and we look at the exception to the exclusion, so let's go with the, I guess under this scenario, we're saying there is faulty workmanship and it's the inadequate ballast. Everything else was fine, but it's the inadequate ballast. Well, again, where's the resulting loss? The resulting loss exception has an exception. But we will not pay for any cost of correcting or making good the fault, inadequacy, or defect itself, including any cost incurred to tear down, tear out, repair, or replace. That would be the excavation. That would be the re-excavation. It goes on to say we will not pay for any resulting loss or damage to the property, the tank, that has the fault. Well, if we're calling the fault the inadequate ballast, it's the tank that has the inadequate ballast. So that's why, as a matter of law, the resulting loss clause doesn't apply here. All of the damage was limited to the tank and the installation process, which is not covered under any of these scenarios. I want to go back to the Allstate case and at the beginning of... But Council, what about the job site? Wasn't the job site flooded? Didn't that need to be repaired because of the rain, not because of the insufficient ballast? No. The only thing that had to be repaired was the tank floated because the excavation became buoyant because there was already groundwater. Then there was precipitation. And because of the inadequate ballast, the tank moved within that excavation. And that was the only part of the project that needed to be re-performed because of this event. Judge Bennett, you pointed out the language in the permanent works definition, which is why we believe that when you're looking at this policy, if we have to make a choice between process and product, process is what this exclusion would apply to because this policy actually ensures all those things you mentioned. Fabrication, assembly, installation, erection, alteration, renovation. This is a builder's risk policy. We are ensuring a contractor and the process of construction. So if we have to make that choice, in this case, and the Ninth Circuit told us in Allstate, it's case by case. Look at the overall circumstances of the case. This case begs for having process being chosen and not product. And finally, on Allstate, the court didn't say that you have to have a final project to be completed. It says you have to have an object to evaluate. We have an object to evaluate. The tank could be evaluated. It was evaluated by the project owner who found that the ballasting wasn't complete. And ESI had a week to complete the ballasting before the rain, and it did not do that. So we had an object to evaluate, and it wasn't done. So even under the product prong, we satisfied the requirements for the exclusion. And I'm down to my last seconds, and I just want to address the pad faith. Counsel, you're actually out of time. Oh, I see. Thank you. We thank counsel for their helpful arguments. This case will be submitted, and with that, we are adjourned for the day. This court for this session stands adjourned.
judges: Navarro, Bennett, Miller